United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY J. WRENN,<br><br>    Plaintiff,<br><br>  v.<br><br>BOY SCOUTS OF AMERICA,<br><br>    Defendant.<br>_____/ | No. C 03-04057 JSW<br><br>**ORDER GRANTING BSA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND GRANTING BSA'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

    Now before the Court is the motion of defendant and counter-claimant Boy Scouts of America ("BSA") for summary judgment, or in the alternative, for summary adjudication of claims. Also before the Court is the cross-motion of plaintiff Gregory J. Wrenn ("Plaintiff") for summary judgment, or in the alternative, for partial summary judgment. Lastly, before the Court is BSA's motion for judgment on the pleadings.

    Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court hereby GRANTS BSA's motion for summary judgment and DENIES Plaintiff's cross-motion for summary judgment. The Court further GRANTS the BSA's motion for judgment on the pleadings.

# BACKGROUND[1]

Plaintiff is a father and founder of the National Council of Youthscouts ("Youthscouts"). Plaintiff founded Youthscouts as an unincorporated non-profit organization in 2002 when his daughter was denied the right to become a member of her twin brothers' Cub Scout troop, operated by a local council of chartered by the BSA. Plaintiff and his daughter decided to form a non-discriminatory scouting organization. (Compl. ¶¶ 1, 10.) On October 17, 2002, Plaintiff filed an application to register "YOUTHSCOUTS" as a trademark with the U.S. Patent and Trademark Office ("PTO"). (*Id.* ¶ 14.) On July 17, 2003, the BSA filed a notice of opposition in relation to the application, thereby commencing a legal action in the Trademark Trial and Appeal Board ("TTAB"), alleging the elements of trademark infringement, dilution, and unfair competition claims under state and federal law. (*Id.* ¶¶ 16-17.) The BSA relied upon seven of its federal registrations in opposition Plaintiff's application and Plaintiff challenged the BSA registrations for "CUB SCOUTS," "EAGLE SCOUT," "BOY SCOUTS OF AMERICA" and "SEA SCOUTS" ("the BSA's Marks") on the basis that the BSA cannot retain exclusive rights over the use of the term "SCOUT." (*Id.* ¶ 23.) On September 5, 2003, Plaintiff filed his response with the TTAB and this lawsuit, seeking to cancel or amend numerous of the BSA's marks on the basis that the terms "Scouts" and "Scouting" are generic.

After a stay of this action and substantial discovery and briefing in the TTAB action, the TTAB issued a ruling finding that the BSA had valid and incontestable rights to the marks "CUB SCOUTS," "EAGLE SCOUT" and "BOY SCOUTS OF AMERICA" and cannot be compelled to add disclaimers to those registration. Following the TTAB's ruling, this Court lifted the stay in this proceeding and the TTAB stayed the action pending before the Board.

Because the TTAB's rulings are not binding on this Court, Plaintiff had also filed this declaratory judgment action on the basis that his challenged use of the term "YOUTHSCOUTS" on goods and services related to scouting programs does not violate BSA's

---

[1] The BSA submitted evidentiary objections, but much of the evidence objected to was not necessary to the resolution of this motion. Therefore, the Court need not rule on the admissibility of such evidence at this time. To the limited extent the Court relied on evidence objected to in resolving the pending motions, the objections are overruled.

rights. Plaintiff argues that the "core of this dispute is around the BSA's effort to claim rights in terms that are in fact generic and unprotectable as a matter of public policy. The terms "SCOUTS" and "SCOUTING" are generic words for scouting programs, i.e., youth-based organization modeled after the ideas of Robert Baden-Powell and the scouting movement at the turn of the twentieth century." (*Id.* ¶ 27.)

Plaintiff alleges a cause of action for declaratory judgment and cancellation of the BSA's challenged federal trademark registrations on the basis that the terms "SCOUT" and "SCOUTING" are generic and unprotectable pursuant to public policy when used in relation to scouting programs. Plaintiff also contends that the BSA should not be able to rely on the challenged registrations because the BSA is guilty of fraud on the PTO in relation to their registration for failing to disclaim exclusive right to the terms "SCOUT" and "SCOUTING" and for failing to disclose use of the terms by the Girl Scouts of America. Plaintiff also contends that BSA is guilty of unclean hands resulting from their "violation of the antitrust laws of the United States, including, without limitation, obtaining registrations involving generic or descriptive terms through fraud, and using such registrations to prevent competitors from using the terms, in an illegal effort ... to monopolize and maintain a monopoly in the market for scouting programs for boys." (*Id.* ¶ 54.) Lastly, Plaintiff contends that removal of generic terms from the public domain in relation to naming and promoting scouting organizations would "unconstitutionally interfere with the rights of Plaintiff and others under the First and Fourteenth Amendments of the United States Constitution." (*Id.* ¶ 55.)

The BSA filed its answer and counterclaims on September 17, 2007, and alleged claims against Plaintiff for: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) trademark dilution in violation of 15 U.S.C. § 1125(c); (3) false designation in violation of 15 U.S.C. § 1125(a); (4) declaratory relief of similarity and possibility of confusion between the contested marks; (5) common law unfair competition, misappropriation and trademark infringement; (6) trademark infringement and dilution in violation of California Business and Professions Code §§ 14320 *et seq.*; and (7) unfair competition in violation of California Business and Professions Code § 17200 *et seq.*

3

1  After the stay of this matter was lifted, on March 28, 2008, the BSA filed a motion for
2  judgment on the pleadings arguing that Plaintiff's declaratory relief action, in essence,
3  impermissibly seeks an advisory opinion from this Court regarding whether dissected portions
4  of the contested composite mark are generic and therefore ineligible for trademark protection.
5  On May 16, 2008, the BSA filed its motion for summary judgment on its own counterclaims,
6  contending that Plaintiff's mark constituted trademark infringement of the BSA's Marks. Also,
7  on May 16, 2008, Plaintiff filed his cross-motion for summary judgment his claims for
8  declaratory judgment on the genericness of the terms 'Scout' and 'Scouting.' Plaintiff contends
9  that the BSA's attempts to monopolize these generic terms violates trademark law, as well as
10 antitrust principles and the public's constitutional right to free expression and to assemble
11 peaceably.

12  The Court held a hearing on the motions on October 10, 2008.

## ANALYSIS

### A. Legal Standard on Motion for Summary Judgment.

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the

4

non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

### B. History of BSA and Congressional Charter.

The Boy Scout Movement originated in England in 1906 by Lord Robert Baden-Powell as the 'Boy Scouts,' and groups of Boy Scouts were established and organized in the United States prior to 1910. However, in 1910, BSA's predecessor was "incorporated in the District of Columbia, and, by Act of Congress, on June 15, 1916, it was incorporated as a nonprofit, nonpolitical, nonsectarian character building membership organization open to all boys regardless of economic status, race or creed, with the purpose of promoting the ability of boys to do things for themselves, to train them in Scoutcraft, and to teach them patriotism, courage, self-reliance, and kindred virtues as a preparation for their future responsibilities in the home and service for the community." *Girl Scouts of the United States of America v. Hollingsworth*, 188 F. Supp. 707, 715 (D.C.N.Y. 1960).

In 1916, Congress passed a charter providing special protections for the Boy Scouts. The original Congressional Charter provided:

> The corporation shall have the sole and exclusive right to use, in carrying out its purposes, all emblems and badges, descriptive or designation marks, and words or phrases now or heretofore used by the Boy Scout of America in carrying out its program.

36 U.S.C. § 27.

In 1998, the charter was changed slightly and now provides:

> The corporation has the exclusive right to use emblems, badges, descriptive or designating marks, and words or phrases the corporation adopts.

36 U.S.C. § 30905.

5

**C.     The BSA's Motion for Summary Judgment.**

The BSA moves for summary judgment on its counterclaim for trademark infringement, asserting that the "YOUTHSCOUTS" mark infringes on the BSA's Marks. Plaintiff moves for summary judgment on its claim for declaratory relief, arguing that the BSA's purported claim over the terms "SCOUTS" and "SCOUTING" is untenable as the terms are generic terms for goods and services related to scouting programs and the BSA may not maintain trademark protection for those terms. The BSA also moves for judgment on the pleadings on Plaintiff's claims based primarily on the theory that the disputed terms "SCOUT" and "SCOUTING" cannot be dissected from the full composite terms at issue in this litigation which are, among others, "YOUTHSCOUTS" and the BSA's Marks. The Court finds that there is a common, threshold question which must be addressed and which will, ultimately, resolve the parties' central dispute. That central issue is whether the mark "YOUTHSCOUTS" infringes on the BSA's marks.[2]

**1.     General Principles of Trademark Law.**

In order to prevail on its counterclaim for trademark infringement, the BSA must demonstrate that it has valid trademarks using the disputed terms, that it is the senior mark holder, and that the potentially infringing use of the mark "YOUTHSCOUTS" is likely to cause confusion in the marketplace. *See Brookfield Commissions, Inc. v. W. Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). There is no dispute about the first two

---

[2] The Court finds that Plaintiff's request for an advisory opinion regarding whether the terms "SCOUT" and 'SCOUTING' are generic runs counter to the anti-dissection rule in this Circuit. *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 912-13 (9th Cir. 1995). The Court therefore finds that the issues presented by Plaintiff's motion for summary judgment and the BSA's motion for judgment on the pleadings essentially moot out each other. The Court has determined that its proper function is to determine whether there is trademark infringement between the BSA's Marks and Plaintiff's mark. Determination of this threshold issue resolves the remainder of the motions, as will be addressed *infra*.

6

1 requirements of the test, but the parties dispute whether the BSA can demonstrate likelihood of
2 confusion.[3]

3 The factors considered to determine whether there is likelihood of confusion include:
(1) strength of the allegedly infringed mark, (2) proximity or relatedness of the goods, (3) similarity of the sight, sound, and meaning of the marks, (4) evidence of actual confusion, (5) degree to which the marketing channels converge, (6) type of the goods and degree of care consumers are likely to exercise in purchasing them, (7) intent of the defendant in selecting the allegedly infringing mark, and (8) likelihood that the parties will expand their product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The factors are intended to guide the court in assessing the basic question of likelihood of confusion. *Eclipse Assoc. Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990). The presence or absence of a particular factor does not necessarily drive the determination of likelihood of confusion. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290-91 (9th Cir. 1992).

**a.   Strength of the Mark.**

The Ninth Circuit utilizes a two-prong test to determine the strength of a particular mark. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) ("'strength' of the trademark is evaluated in terms of its conceptual strength and commercial strength"); *see also Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) (approving analysis of mark for distinctiveness as well as strength in the marketplace).

Marks are classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Id.* The Court finds that the BSA's Marks are suggestive when referred to in the context of youth development programs. *See*

---

[3] The Court agrees with the BSA that it need not demonstrate the likelihood of confusion because it has been granted special protection by Congressional charter. *See* 36 U.S.C. § 30905; *see also The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 339 (4th Cir. 2007) (holding that Congress has removed specific trademarks from the general trademark process); *see also S.F. Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 531 (1987) ("The protection granted to the USOC's use of the Olympic words and symbols differs from the normal trademark protection in two respects: the USOC need not prove that a contested use is likely to cause confusion, and an unauthorized user of the word does not have available to normal statutory defenses.") However, for the sake of completeness, the Court will nevertheless perform the infringement analysis.

7

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) ("If a consumer must use imagination or any type of multistage reasoning to understand the mark's significance, then the mark does not describe the product's features. but suggests them. Such a mark is therefore classified as 'suggestive' rather than 'descriptive.'").

Plaintiff argues that the BSA's Marks are generic because he continues to contend that the component term, "Scout" or "Scouting" are generic and unprotectable. A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. It cannot become a trademark under any circumstances. *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). In this case, the Court finds that the disputed, composite marks are not generic because, taken as a whole, the marks do not refer to a genus. The composite marks, viewed in their entirety, are suggestive because one must use the imagination to link the generic understanding of "scout" to a youth development program, that is, the Boy Scouts of America. Even were the Court to find that the BSA's composite marks were merely descriptive, there is no dispute that the marks have attained secondary meaning stemming from their long use in commerce and their incontestable status as strong marks.[4]

There is no dispute that the BSA have maintained the commercial strength of their marks by "extensive advertising, length of exclusive use, public recognition and uniqueness." *See Accuride International, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989). The

---

[4] The Court notes, for the sake of clarity, that does not need to make a determination whether the dissected terms "SCOUTS" or "SCOUTING" are suggestive or generic because such an analysis is neither required to adjudicate the issues presented nor permitted by virtue of the anti-dissection rule. *See Self-Realization Fellowship Church*, 59 F.3d at 912-13. Again, the Court must resolve the inquiry posited, that is, whether the SBA's Marks are infringed by Plaintiff's proposed use of his mark. However, again for the sake of completeness, the Court is persuaded by cases interpreting the scope of the BSA's national charter which indicate that the disputed dissected terms, "the words 'Scout' and 'Scouting' had acquired a secondary meaning as applying to the Boy Scout movement," *Adolf Kastor & Bros. v. Federal Trade Commission*, 138 F.2d 824, 825 (2d Cir. 1943); *see also Girls Scouts of the United States of America v. Hollingsworth*, 188 F. Supp. 707, 715 (1960) (holding that the parallel Congressional charter protecting the Girl Scouts' use of words or phrases protects the use of the word 'Scout' in a competing merchandising context). The Court is not persuaded by Plaintiff's contention that the merchandising context is a distinction with any significant difference.

8

record before the Court is replete with instances of advertisement and extensive control of the BSA's Marks, from both the BSA and from Plaintiff.

With regard to both conceptual and commercial strength of the BSA's Marks, the Court is again persuaded by the fact that Congress passed a charter enabling the BSA to escape the traditional confines of trademark registration altogether in granting protections to the "words and phrases" chosen by the BSA to identify its programs. When Congress passed the original charter in 1916, it acknowledged the fame and popularity of the BSA even at that time, noting the organization's "high standing and popularity." H.R. Rep. No. 130 (1916). From before 1916 when the charter was passed, the strength of the Boy Scouts' marks had been established as a matter of law. Again, the court in *Adolf Kastor* explained that the Federal Trade Commission had already found that "the words 'Scout' and 'Scouting' had acquired a secondary meaning as applying to the Boy Scout movement." 138 F.2d at 825. In 1943, the court found "there was adequate support for that conclusion in the testimony of persons who were in a position to know the public mind, and whom the Commission credited." *Id.* The "Boy Scouts' charter extended the exclusive naming right to 'words or phrases,' thus creating substantially broader protection for the Boy Scouts' name." *American National Theatre and Academy v. American National Theatre Inc*., 472 F. Supp. 2d 487, 492 (S.D.N.Y. 2006). From the few reported cases interpreting the Congressional charter and comparable statutes granting similar protections, "it appears that Congress' objective has been to prevent the deceptive or confusing use of these corporations' mottoes, emblems, and the like by unauthorized persons. Given the degree of familiarity with many of the symbols in question, such unauthorized use, even in connection with wholly unrelated goods or services, would almost certainly convey the false impression of endorsement or sponsorship." *Stop the Olympic Prison v. United States Olympic Committee*, 489 F. Supp. 1112, 1120 (S.D.N.Y. 1980).

The Court therefore finds, based upon the factual record presented as well as the repeated findings of courts dating back from the genesis of the Boy Scout movement in the United States, in addition to the legislative protection afforded by charter, that the BSA's Marks

9

have achieved and been accorded significant conceptual and commercial strength. Thus, the important factor of strength of the mark tips heavily in favor of the BSA.

### b. Proximity or Relatedness of Goods or Services.

The next factor the Court must consider to determine likelihood of confusion in the proximity or relatedness of the good or services of the potentially infringing marks. *See Sleekcraft*, 599 F.2d at 348-49. "Directly competing goods are in the closest proximity under the likelihood of confusion analysis." *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1091 (C.D. Cal. 2006). Plaintiff concedes that his organization offers services directly competitive with the services offered by the Boy Scouts. Both parties agree that the proximity of the goods and services factor tips in favor of the BSA for likelihood of confusion.

### c. Similarity of Sight, Sound and Meaning of Marks.

The parties disagree about the similarity of the BSA composite marks, with the word "CUB" or "EAGLE" proceeding the term "SCOUT" for the BSA Marks and Plaintiff's composite mark "YOUTHSCOUTS." However, when evaluating the similarities between marks, a lesser degree of similarity is required when the goods are directly competitive. *See Sleekcraft*, 599 F.2d at 350; *see also Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) ("Related goods are more likely than non-related goods to confuse the public as to the producer of the goods. A diminished standard of similarity is therefore applied when comparing the marks of closely related goods.") Given the strength of the BSA Marks, the requirement of similarity is lessened.

However, the Court finds the disputed marks similar in sound and meaning. *See PerfumeBay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174-75 (9th Cir. 2007 ) (finding mark "PerfumeBay" which incorporated the strong, well-known mark "eBay" to be confusingly similar in the internet merchandising context). The contested composite marks both contain words indicating the programs are aimed at children and the second term of each mark is the word 'scout.' Plaintiff's mark combines the term 'youth' with the disputed dissected term "scout' to form a composite mark connoting young scouts, just as the BSA's Marks combine the terms 'cub,' 'eagle' and 'boy' before the term 'scout' to connote an organization aimed at boys

10

1  and scouting. The two-syllable marks mean similar things and employ the same root term,

2  'scout' in the same context and for competing services in generally the same youth market.

3       The Court therefore finds that the similarity of the marks favors a finding of

4  infringement in favor of the BSA.

### d. Evidence of Actual Confusion.

Although there is no evidence of actual confusion in the record, it is unlikely that such confusion would have arisen given the infancy of Plaintiff's youth organization and brief use of the mrk "YOUTHSCOUTS." There have only been 9 or 10 members, three of whom are Plaintiff's own family, and the development of the project has been stalled pending resolution of this litigation. Therefore, this factor does not factor into the calculus of potential confusion.

### e. Similarity of Marketing Channels.

In this matter, Plaintiff has conceded that he uses the same marketing channels as the BSA for his services. In addition, both parties use the internet as a marketing and advertising channel to target young people and their parents. *See PerfumeBay.com Inc.*, 506 F.3d at 1174 (holding that courts consider the use of the internet as a marketing and advertising channel "as exacerbating the likelihood of confusion.").

Plaintiff contends that parents, in selecting youth organization for their children, are extremely careful. However, the Court finds that the marks and the services offered by both parties are so similar that even initial confusion on the part of parents selecting an organization for their children's participation may be deemed actionable infringement. Plaintiff has admitted that he has paid to have his website for his organization listed on the internet by utilizing key search terms including 'Scout' and "Scouting,' thereby increasing the risk that consumers may be confused. *See Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004) ("Although dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement.") The Court finds the similarity of the marketing channels favors a finding of infringement in favor of the BSA.

### f. Intent of Plaintiff in Selecting Mark.

Plaintiff argues that it was not his intent to choose a mark confusingly similar to the BSA Marks in order to capitalize on their reputation. However, "[w]here an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002). While it is Plaintiff's contention that he was entitled to use the term as he believes it to be generic, there is no question from the record that Plaintiff knew that the term 'Scout' was similar to the well-known Boy Scouts.

Based on weighing the above factors, the Court finds that Plaintiff's mark for his youth organization infringes on the BSA's Marks because there is a significant likelihood of confusion.

The BSA is entitled to summary judgment on its dilution claim under 15 U.S.C. § 1125(c) because it can establish that (1) their marks are famous; (2) Plaintiff is making commercial use of his mark in commerce; (3) Plaintiff began use after the BSA's Marks became famous; and (4) Plaintiff's use presents a likelihood of dilution of the distinctive value of the mark. *See Avery Dennison Corp. v. Sumpton*, 189 F.2d 868, 874 (9th Cir. 1999). Any commercial use of a mark confusingly similar to the BSA's famous marks is necessarily diluting. *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1007 (9th Cir. 2004). The BSA's Marks are famous, as discussed *supra*, and there have been many courts who have recognized the terms 'Scout' and 'Scouting' are associated with the BSA's services and products. *See, e.g., astor*, 138 F.2d at 825. Therefore, the BSA prevails on its claims for dilution.

In addition, the BSA's remaining counterclaims for relief are based upon the same finding of likelihood of confusion and therefore, the BSA is entitled to summary judgment on their remaining claims.

### D. The BSA's Motion for Judgment on the Pleadings and Plaintiff's Cross-Motion for Summary Judgment.

Plaintiff moves for summary judgment on his declaratory relief action, seeking a declaration that the BSA cannot prevent other scouting organizations from using the terms 'scout' and 'scouting' to describe youth education programs. Plaintiff contends that those terms are generic when used in that context. Plaintiff also seeks a declaration that the "YOUTHSCOUTS" mark does not infringe the BSA's trademarks and that there is no likelihood of dilution of the BSA's Marks.

The BSA moves for judgment as a matter of law on Plaintiff's claims, contending that the core of Plaintiff's argument regarding the disputed terms 'Scouts' and 'Scouting' relies on an improper allegation of genericness of the component terms of registered trademarks. The BSA contends that Plaintiff may not receive an advisory opinion on the invalidation of a composite mark based solely on the genericness of a component term. *See Self-Realization Fellowship Church*, 59 F.3d at 912-913. In addition, the BSA contends that Plaintiff's other claims fail because they are based on the same troubled premise. The BSA argues that they cannot be found liable for fraud on the PTO, or violation of unnamed antitrust laws, or constitutional violations by their registration of the disputed marks based on the same theory of invalidity of the composite marks due to alleged genericness of a component term.

The Ninth Circuit expressly prohibits the dissection of a composite mark into its component parts for the purposes of reviewing its validity. *See id.* ("A court may not review the validity of a composite-term trademark by 'dissecting' the term and reviewing the validity of its component parts individually."); *see also GoTo.com*, 202 F.3d at 1207 ("it is the mark in its entirety that must be considered – not simply individual elements of that mark"); *Official Airline Guides,* 6 F.3d at 1392 ("[T]he validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace."). This Court must, as it has, focus its validity inquiry on the trademark as a whole and not on the possible genericness of its component terms. *See Reno Air Racing Association, Inc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006); *see also California Cooler, Inc. v. Loretto Winery, Ltd.*,

13

774 F.2d 1451, 1455 (9th Cir. 1985) ("[T]he validity of a trademark is to be determined by viewing the trademark as a whole ... [T]he composite may become a distinguishing mark even though its components individually cannot."); *Estate of P.D. Beckwith, Inc. v. Commissioner of Patents*, 252 U.S. 538, 545-46 (1920) ("The commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail.")  The Court, following clear authority, has engaged the task of reviewing the validity of the composite marks and, finding infringement, declines Plaintiff's invitation to dissect the composite terms and render an advisory opinion about the validity or genericness of the disputed component terms, 'Scouts' and 'Scouting.'[5]

In his complaint, Plaintiff also vaguely refers to fraud committed by the BSA on the PTO in failing to alert the Office of the existence of the existence of the Girl Scouts of America or the potential that the component terms within the BSA's Marks were generic.  (Compl. ¶ 53.)  The Court has found that the BSA's Marks are valid and not generic.  Further, the Court finds that there is no plausible argument to support the contention that the PTO was unaware of the coexistence of the Boy Scouts of America and the Girl Scouts of America.  By their routine granting of the Girls Scouts' registrations and the long history of the two organizations, it is clear that the PTO was well-aware of the Boy Scouts and Girl Scouts Congressional charters and their concomitant vested rights.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (holding that a district court should grant a motion to dismiss if the plaintiff has "not pled enough facts to state a claim to relief that is plausible on its face.")

---

[5] Plaintiff contends that the BSA's mark for its magazine "SCOUTING" is generic and must be canceled on that basis. *See* 15 U.S.C. § 1064(a)(3).  The Court finds persuasive the reasoning in *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 n.2 (9th Cir. 2002), in which the court held that the term and magazine title "ENTREPRENEUR," was not generic because it "does not state the general name of [the company's] product."  Here, too, the name of the BSA's magazine does not state a general name of the youth organization.  In fact, Plaintiff's complaint does not allege that the term 'Scouting' is a name of a trade, but rather that it is a term that suggests or evokes the BSA's specific youth programs.  (Compl. ¶ 27.)  The Court finds the BSA's use of the name "SCOUTING" for its magazine does not state the general name of the BSA's product, but rather evokes or makes reference to the specific types of youth organizations offered by the BSA.  Therefore, the Court does not find the use of the term as a title of the BSA's magazine to be generic and unprotectable.

14

In addition, Plaintiff vaguely alleges that the BSA's registration of their marks violates antitrust laws. (Compl. ¶ 54.) Again, having found that the registrations are valid and not based on fraud, and the terms not generic, the Court finds no basis for a finding of liability based on an antitrust theory.

Lastly, Plaintiff contends that removal of the claimed generic terms from the public domain in relation to naming and promoting youth organizations create an unconstitutional infringement of the public's right to freedom of expression and the freedom to assemble peaceably. (*Id.* ¶ 55.) Because the Court has found that the term "YOUTHSCOUTS" infringes the trademark protection granted to the BSA's Marks, the Court finds that Plaintiff's contention about the BSA's unconstitutional use of the disputed terms holds no merit. *See, e.g., E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d at 1297 (holding that misleading commercial speech can be restricted where speech tends to mislead and confuse consumers about the source of the product in violation of a valid trademark).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Boy Scouts of America's motion for summary judgment, DENIES Plaintiff's cross-motion for summary judgment and GRANTS the Boy Scouts of America's motion for judgment on the pleadings. A separate judgment shall issue and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October 28, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE